

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

August 22, 1951

Hon. Stewart W. Hellman
Criminal District Attorney
Tarrant County
Fort Worth, Texas

Opinion No. V-1251

Re: Ad valorem taxation of mili-
tary housing units to be con-
structed and maintained on
Carswell Air Force Base by
private enterprise.

Dear Sir:

        In your letter of July 25, 1951, you requested the opin-
ion of this office as to State and local ad valorem taxation of a
military housing project to be constructed on Carswell Air Force
Base in accordance with the provisions of the Military Housing
Act. P.L. 211, 81st Cong. 1949, 63 Stat. 570, 12 U.S.C. § 1748.
You later sent us a photostatic copy of the proposed lease to be
executed by the Government and the lessee of the project.

        The lease provides that the Government will lease the
described land for 75 years to the lessee to be used for erecting,
maintaining and operating the housing project. Lessee is to pay
the Government an annual rental of $100.00. Provision is made
for obtaining mortgage insurance under Title VIII of the National
Housing Act. The lessee is required to lease all units of the hous-
ing project to such military and civilian personnel of the Army,
Navy, Marine Corps or Air Force (including Government contrac-
tors' employees) assigned to duty at the military installation or in
the area where the installation is located as are designated by the
Commanding Officer. In the event the Commanding Officer fails
to designate such personnel within a stated period, and upon other
stated conditions, the lessee may lease the units to persons other
than said military or civilian personnel. Detailed provisions cover
leasing agreements made by the lessee.

        The eighth covenant and condition of the lease contract
reads, in part, as follows:

        "8. That the Lessee shall pay to the proper au-
    thority, when and as the same become due and payable,
    all taxes, assessments, and similar charges which, at
    any time during the term of this Lease, may be taxed,
    assessed or imposed upon the Government or upon the
    Lessee with respect to or upon the leased property. In
    the event any taxes, assessments or similar charges
    are imposed with the consent of the Congress of the

United States upon the property owned by the Government and included in this Lease (as opposed to the leasehold interest of the Lessee therein), this Lease shall be renegotiated so as to accomplish an equitable reduction in the rental provided above, which shall not be greater than the difference between the amount of such taxes, assessments or similar charges and the amount of any taxes, assessments or similar charges which were imposed upon such Lessee with respect to his lease-hold interest in the leased property prior to the granting of such consent by the Congress of the United States; . . . ."

At the expiration of the lease all improvements made upon the premises and all items required to be furnished by the lessee are to remain on the leased premises and be the property of the Government without compensation.

Use and occupancy of the leased premises are subject to such rules and regulations as the Commanding Officer shall prescribe for military and security purposes. After there is no Federal Housing Insured Mortgage on the property and the leased premises are no longer under the control of the Federal Housing Commissioner, the lessee and the Commanding Officer are to agree on maintenance and repair standards.

The Government has the right after the expiration of 39 years to terminate the lease provided the interest of the Federal Housing Administration in the lease and in any mortgage on the leasehold interest has been fully terminated. After there is no mortgage held or insured by the Federal Housing Administration on the leasehold estate, and the leased premises are no longer under the control of the Commissioner, all disputes concerning establishment of rental rates shall be decided by specified parties. You state in your request that the rental rates on the Carswell Air Base units will be the equivalent of Government rental allowance.

The various other covenants and conditions stated in the lease are not material to a determination of your question.

You have predicated your question of tax exemption on the assumption that the State of Texas will cede "exclusive jurisdiction" to the United States over the lands upon which the housing units will be erected. We agree that without such cession the value

of the leasehold interest would be subject to tax. Art. 7173, V.C.S.;[1] Daugherty v. Thompson, 71 Tex. 192, 9 S.W. 99 (1888); State v. Taylor, 72 Tex. 297, 12 S.W. 176 (1888). Article 5248, V.C.S., codifies the fundamental rule of law that lands and improvements thereon belonging to the United States are exempt from taxation; but it also expressly provides as follows:

" . . . any portion of said lands and improvements which is used and occupied by any person, firm, association of persons or corporation in its private capacity, or which is being used or occupied in the conduct of any private business or enterprise, shall be subject to taxation by this State and its political subdivisions."

The eighth covenant of the lease, previously quoted, recognizes the possibility that local taxes might accrue on the lessee's interest in military housing projects. We are of the opinion that in the absence of a cession of jurisdiction by the State such taxes would be validly imposed. 51 Am. Jur. 280, Taxation, § 218.

We will next consider the effect of a cession of "exclusive jurisdiction" on the taxability of the leasehold interest. Article 5247 reads as follows:

"Whenever the United States shall acquire any lands under this title, and shall desire to acquire constitutional jurisdiction over such lands for any purpose authorized herein, it shall be lawful for the Governor, in the name and in behalf of the State, to cede to the United States exclusive jurisdiction over any lands so acquired, when application may be made to him for that purpose, which application shall be in writing and accompanied with the proper evidence of such acquisition, duly authenticated and recorded, containing or having annexed thereto, an accurate description by metes and bounds of the lands sought to be ceded. No such cession shall ever be made except upon the express condi-

---

[1] The pertinent provisions of Article 7173 read as follows:

"Property held under a lease for a term of three years or more, or held under a contract for the purchase thereof, belonging to this State, or that is exempt by law from taxation in the hands of the owner thereof, shall be considered for all the purposes of taxation, as the property of the person so holding the same, except as otherwise specially provided by law. . . ."

tion that this State shall retain concurrent jurisdiction with the United States over every portion of the lands so ceded, so far, that all process, civil or criminal issuing under the authority of this State or any of the courts or judicial officers thereof, may be executed by the proper officers of the State, upon any person amenable to the same within the limits of the land so ceded, in like manner and like effect as if no such cession had taken place; and such condition shall be inserted in such instrument of cession."

This Article constitutes the only method of transferring exclusive jurisdiction. Curry v. State, 111 Tex. Crim. 264, 12 S.W.2d 796 (1928).[2]

Assuming that the Governor cedes "exclusive jurisdiction" to the United States over the lands upon which the housing project will be constructed and that such cession is accepted, we are of the opinion that the cession would have the effect of exempting from State and local taxation all private property rights and interests on or within the bounds of the area over which jurisdiction is ceded. This result would necessarily flow from a grant of exclusive jurisdiction over land, since the State would then lack the requisite jurisdiction necessary to the imposition of any tax. No cases have construed the phrases "constitutional jurisdiction" and "exclusive jurisdiction," as used in Article 5247, for the purpose of ascertaining their effect on the State's jurisdiction to tax privately owned property on or within the confines of the land so ceded. The language used in these phrases is plain, unambiguous and all-embracing, and would seem to deprive the State of all jurisdiction within the ceded area except that which Article 5247 expressly provides shall be retained. Furthermore, the inclusion of the proviso in this Article is further indication that the only type of jurisdiction to be retained by the State of Texas is a concurrent

_____

[2] Article I, Section 8, Clause 17, of the Federal Constitution provides that Congress shall have the power "to exercise exclusive legislation . . . over all places purchased by the consent of the Legislature of the state in which the same shall be, for the erection of forts, magazines, arsenals, dock-yards, and other needful buildings." Article 5242, V.C.S., gives express legislative consent to the acquisition of lands by the Government for the purposes stated in the provision of the Federal Constitution just quoted as well as for other purposes; but the Court in the Curry case held that there was no cession of jurisdiction by implication in the language of Article 361, R.S. of 1895 (now substantially embodied in Article 5242).

jurisdiction for the purpose of service of process upon persons amenable thereto within the limits of the ceded land.

In Curry v. State, supra, the Court was concerned with the jurisdiction of a State court over a criminal offense committed on a military reservation. The Court first noted the conditions of concurrent jurisdiction to serve criminal and civil process as expressed in Article 375 (now Art. 5247) and then stated at page 799:

"In other words, complete consent of the state, which carries with it exclusive jurisdiction over such land as above stated, has been withheld unless and until the Governor of this state under the terms of articles 374 and 375, R.S. 1895 [Art. 5247], makes a transfer of same." (Emphasis added throughout.)

In Lasher v. State, 30 Tex. App. 387, 17 S.W. 1064 (1891), the Court said that Articles 355 and 354 (Art. 5247) "authorize the governor of the state . . . to cede to the United States exclusive jurisdiction over lands . . . , the state retaining concurrent jurisdiction only so far that all process, civil or criminal, issued under the authority of the state or of any of the courts or judicial officers thereof, may be executed . . . on any person amenable to the same within the limits of the land so ceded . . ." At page 1065 the Court said:

" . . . In U. S. v. Davis, 5 Mason, 356, is was held that a reservation in a cession of 'concurrent jurisdiction' to serve state processes, civil and criminal, in the ceded place, does not exclude the exclusive legislation or exclusive jurisdiction of the United States over the ceded place. It merely operated as a condition of the grant. . . ."

An examination of the statutes of other states which have been interpreted as placing further qualifications upon cessions of jurisdiction than does our statute, as we interpret it, sustains our conclusion. The West Virginia statute considered in James v. Dravo Contracting Co., 302 U.S. 134 (1937), ceded to the United States concurrent jurisdiction over land acquired by the United States with the consent of the State. The Court held that the provision as to concurrent jurisdiction qualified the provision giving consent and that by virtue of this reservation the State retained jurisdiction to tax over lands purchased or condemned by the United States for navigation improvements. A Kansas statute ceded to the United States "exclusive jurisdiction" over the land within the limits of Fort Leavenworth but expressly reserved the right to serve civil and criminal process and "the right to tax railroad, bridge, and other corporations, their franchises and property, on said

Reservation." Laws of Kansas, 1875, p. 95. The Court in Fort Leavenworth Ry. v. Lowe, 114 U.S. 525 (1885), upheld the right of the State to subject the railroad property to taxation. In each of these cases the State had retained the taxing power in cessions different from those contemplated by the Texas statute.

## SUMMARY

The leasehold interest in a military housing project to be constructed, maintained, and operated by private enterprise on Carswell Air Force Base will be subject to State and local taxation unless the State of Texas cedes exclusive jurisdiction over the lands on which the houses will be built to the United States.

Yours very truly,

PRICE DANIEL
Attorney General

By Marietta M. McGregor Creel
Mrs. Marietta McGregor Creel
Assistant

APPROVED:

W. V. Geppert
Taxation Division

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

Price Daniel
Attorney General.

MMG/mwb